UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ALLAH-KASIEM,                       :
                                    :
                 Plaintiff,         :    09 Civ. 9665 (DLC)
                                    :
            -v-                     :    OPINION & ORDER
                                    :
JOSE RIVERA, et al.,                :
                                    :
                 Defendants.        :
                                    :
------------------------------------X

APPEARANCES:

For Pro Se Plaintiff:
Allah-Kasiem
DIN Number 83A0783
Sullivan Correctional Facility
325 Riverside Drive
P.O. Box 116
Fallsburg, NY 12733

For Defendants:
Kevin R. Harkins
Assistant Attorney General
State of New York
120 Broadway, 24th Floor
New York, NY 10271

DENISE COTE, District Judge:

     Pro se plaintiff Allah Kasiem brings this 42 U.S.C. § 1983

action for a declaratory judgment, injunctive relief, and

compensatory damages against seventeen officers and employees at

the Sullivan Correctional Facility ("Sullivan") and the New York

State Department of Correctional Services ("DOCS").[1]  Thirteen of

---

[1] The defendants have moved to dismiss on behalf of defendant
Captain James Gilmore ("Capt. Gilmore").  Capt. Gilmore is not

those defendants have filed a motion under Rule 12(b)(6) of the
Federal Rules of Civil Procedure to dismiss the complaint for
failure to state a claim.[2]  For the following reasons, the
defendants' motion is granted as to eleven of the thirteen
defendants.  The plaintiff is granted leave to amend his
complaint to state a claim for deliberate indifference to a
serious medical condition under the Eighth Amendment.

BACKGROUND

The following facts are drawn from the complaint of October
23, 2009, and are assumed to be true for the purposes of
deciding this motion to dismiss.  Kasiem principally alleges
that in retaliation for Kasiem's filing of grievances -- many of
which were filed against Sgt. Rivera -- various defendants
falsely charged him of misconduct and interfered with his use of
the grievance process.  He further alleges that defendants
violated his right to due process during his Tier II and Tier
III disciplinary hearings.  The plaintiff's most significant
allegations are as follows:

---

listed in the caption of the complaint, but the body of the
complaint alleges wrongdoing by him and the plaintiff has
attempted to serve him.  This Opinion assumes he is a defendant
and grants his motion to dismiss.

[2] As of January 6, 2011, four defendants -- Corrections Officer
("CO") Martin Albert ("CO Albert"), Sergeant Jose Rivera ("Sgt.
Rivera"), CO Brian Villegas ("CO Villegas"), and Sergeant Edward
Madison ("Sgt. Madison") -- had not yet been served.

A.     September 30, 2008 Tier III Hearing and Sgt. Rivera's
       Threatening Gesture

Kasiem alleges that due to racial discrimination and in
retaliation for grievances that he had filed against Sgt.
Rivera, on or about August 23, 2008, Sgt. Rivera and CO Villegas
"framed" or falsely accused him of attempting to smuggle gang-
related material to an inmate in the Special Housing Unit
("SHU").  The discrimination charge against Sgt. Rivera rests on
Kasiem's allegation that Sgt. Rivera wanted to replace him as
chief administrative law clerk at the Sullivan Law Library with
an Hispanic inmate.

On or about September 30, 2008, Capt. Gilmore conducted a
Tier III hearing and refused to permit Kasiem to call a witness
because Capt. Gilmore was conspiring with Sgt. Rivera.  Capt.
Gilmore found Kasiem guilty and sentenced him to sixty days in
keeplock confinement.  This decision was affirmed on appeal.

In October 2008, plaintiff filed a grievance against Sgt.
Rivera and CO Villegas with DOCS Commissioner Brian Fischer
("Comm. Fischer").  This grievance was referred to
Superintendent James Walsh ("Supt. Walsh") who, in turn,
referred it to Deputy Superintendent for Security Patrick
Griffin ("DSS Griffin").  DSS Griffin assigned Lieutenant Sandra
Ostrowski ("Lt. Ostrowski") to investigate the complaint.
During Lt. Ostrowski's investigation, plaintiff was taken to the

3

sergeant's office to be interviewed.  While Kasiem was awaiting the start of the interview, Sgt. Rivera -- who was accompanied by Sgt. Villegas -- threatened Kasiem by standing in the corridor outside the office and drawing his finger across his throat.  Lt. Ostrowksi did not observe the threat.

Lt. Ostrowski reported to DSS Griffin that there was no evidence to support Kasiem's grievance against Sgt. Rivera and CO Villegas.  She did not, however, interview the plaintiff's witnesses before reaching this conclusion.  DSS Griffin referred Lt. Ostrowski's findings to Supt. Walsh who passed them on to Deputy Commissioner Lucien LeClaire.  Lt. Ostrowski also told DSS Griffin that she had been with the plaintiff at all times during his interview at the sergeant's office and that she did not see Sgt. Rivera gesture toward the plaintiff from the hallway.  Kasiem contends that Lt. Ostrowski failed to report Sgt. Rivera's threat to DSS Griffin "solely on the basis of retaliatory reprisal."

B.   January 20, 2009 Tier III Hearing

On or about December 30, 2008[3], Sgt. Rivera, CO Albert and CO Gordon Simpson ("CO Simpson") "frame[d] [the] plaintiff with a false report and fabricated charges of stealing a medical

_____

[3] Kasiem alleges that the above-described incident occurred on December 30, 2009.  Since the complaint is dated October 23, 2009, it is assumed that the year is 2008.

4

dictionary from the Law Library."  On January 20, 2009, at a
Tier III hearing, the charge was dismissed.  Kasiem alleges,
however, that the officer who presided over the hearing,
Education Supervisor Robert Woods ("ES Woods"), confiscated
three of Kasiem's law books.  Plaintiff appealed ES Woods's
seizure of his books to the Director of Special Housing/Inmate
Disciplinary Program Norman Bezio ("DSH Bezio").  By letter
dated February 25, 2009, DSH Bezio instructed Supt. Walsh to
return the books to Kasiem, but this was never done.

C.   March 19, 2009 Tier III Hearing

     On or about March 9, 2009, Kasiem filed a sexual harassment
grievance with Sergeant Rene Lawrence ("Sgt. Lawrence") based on
a conversation that he overheard in which other officers,
including Sgt. Rivera, referred to Sgt. Lawrence using
derogatory language.  Sgt. Lawrence did not investigate the
plaintiff's claim and retaliated against him for filing the
grievance by placing the plaintiff in keeplock confinement.  On
March 19, Kasiem was found guilty of a violation that he does
not identify, after a Tier III hearing conducted by Steward
Sandra Camio ("S. Camio").  S. Camio sentenced Kasiem to 90 days
in keeplock confinement.  On April 13, DSH Bezio reversed the
decision, but Kasiem had already spent thirty-five days in
keeplock confinement.

D.   June 4, 2009 Tier II Hearing and Oral Threat by Sgts.
     Rivera and Madison

     Next, on May 29, 2009, Sgt. Rivera filed a false report

based on fabricated evidence, alleging that Kasiem had "evaded"

medical keeplock.  Plaintiff had been released from medical

keeplock nine days earlier.  At a Tier II hearing convened on

June 4, 2009, Sgt. Rivera's charge against Kasiem was dismissed.

     Around the same time, Kasiem filed a grievance against Sgt.

Rivera for filing the May 29 false report.  At some point

thereafter, Sgt. Rivera called Kasiem to his office and "made a

death threat" to try to force him to withdraw his grievance.

     On June 11, Sgt. Madison made a racially derogatory and

sexual remark to Kasiem and threatened to harm him unless he

withdrew his grievances against Sgt. Rivera.  On the same day,

Kasiem responded to these threats by filing a grievance against

Sgt. Madison for unlawful racial discrimination and sexual

harassment.

E.   June 22 and June 30, 2009 Tier II Hearings

     On June 12, 2009, CO Albert gave Kasiem a pass for sick

call and then alerted Sgt. Madison that the plaintiff was on his

way.  When Kasiem reached "the crossgates," Sgt. Madison wrongly

accused Kasiem of attempting to "smuggle one peppermint candy to

Sick Call and refusing to obey direct orders."  Sgt. Madison

sent Kasiem to keeplock confinement and filed a false report against him.

Kasiem attempted to prepare for his upcoming Tier II hearing concerning the June 12 incident by asking Sgt. Lawrence to provide him with employee assistance.  On or about June 16, Sgt. Lawrence denied Kasiem's request for assistance and filed false charges against him, alleging that he had disobeyed a direct order.

On June 22, plaintiff appeared before Lieutenant Gary Sipple ("Lt. Sipple") for a Tier II hearing concerning the June 12 charges filed by Sgt. Madison.  Several years earlier, in October 2007, Lt. Sipple, who was then a sergeant, filed false charges against Kasiem that were subsequently dismissed at a Tier II hearing.  Due to this prior incident, Lt. Sipple was biased against Kasiem and agreed to help Sgt. Madison and Sgt. Rivera by prohibiting Kasiem from introducing certain evidence at his Tier II hearing and ordering that Kasiem be removed from the hearing when he attempted to place his objections on the record.  After the plaintiff was taken from the hearing, Lt. Sipple -- in concert with Sgt. Rivera -- imposed a sentence of twenty-one days in keeplock confinement.  On the same day, Kasiem filed a grievance against Lt. Sipple as well as a Tier II administrative appeal with Supt. Walsh and Captain Dale Long

7

("Capt. Long").  On June 26, 2009, Capt. Long affirmed the Tier II hearing decision without reviewing the record.

On June 30, Kasiem appeared at a second Tier II hearing before Lt. Sipple, this one arising from Sgt. Lawrence's June 16 report.  Lt. Sipple prevented the plaintiff from calling certain witnesses who would have offered testimony regarding Kasiem's vision and hearing impairments.  Lt. Sipple did, however, permit R.N. Lindsay to testify that Kasiem had excessive ear wax which may have interfered with his hearing between May 21 and June 25, 2009.[4]  At the hearing, Lt. Sipple imposed a sanction of thirty days keeplock confinement.  The plaintiff appealed the Tier II decision to Supt. Walsh.  DSS Griffin was ultimately assigned to review the appeal, and dismissed the appeal without reviewing the hearing record.

F.   July 21, 2009 Tier III Hearing

On or about June 30, 2009, CO Albert, Sgt. Rivera, CO Villegas, and CO Simpson conducted a search of Kasiem's cell and recovered legal documents belonging to another inmate and a legal assistance approval form signed by Superintendant Patty Nelson ("Supt. Nelson") that was missing an expiration date.  CO Villegas and CO Simpson forged an expiration date on the form to

---

[4] The complaint states that R.N. Lindsay testified that Kasiem had excessive ear wax from May 21, 2009 to June 25, 2008, but based on the context, it is assumed Kasiem intended to refer to June 25, 2009.

make it appear as if Kasiem had impermissibly provided legal assistance to a fellow prisoner.  CO Albert then filed a false report regarding the incident.

At a July 21, 2009 Tier III hearing before Deputy Superintendant for Mental Health Bryan Hilton ("DSMH Hilton"), Supt. Nelson falsely testified that she had not forgotten to put an expiration date on Kasiem's legal assistance form.  At the hearing, DSMH Hilton "failed to produce the physical evidence" underlying the charge against the plaintiff and he failed to "consider [Kasiem's] defense of retaliatory reprisals."  DSMH Hilton found Kasiem guilty and imposed a penalty of 120 days in keeplock confinement.  Kasiem appealed the decision to Comm. Fischer.  DSH Bezio affirmed the decision on or around August 25, after Lt. Sipple requested that DSH Bezio deny the appeal as a personal favor to him.

G.  **Failure of Supervisors to Adequately Address Kasiem's Grievances**

Finally, Kasiem contends that Supt. Walsh, Supt. Nelson and DSS Griffin, as supervisory officials, are liable for the injuries he suffered due to the conduct of CO Albert, CO Villegas, and CO Simpson.  In support of this claim, Kasiem points out that he filed numerous grievance complaints against these individuals, but that no corrective action was taken.

On November 20, 2009, Kasiem, proceeding pro se, filed this lawsuit.  On May 7, defendants filed this motion to dismiss. The motion to dismiss was fully submitted on August 27.

## DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  For a plaintiff's claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007) (citation omitted)). Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950.

A court considering a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). Moreover, pleadings filed by pro se plaintiffs are to be construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Harris v. Mills, 572 F.3d 66, 72 (2d Cir.

10

2009).  A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555, 557).

The defendants' motion to dismiss identifies four principle reasons why the plaintiff's complaint should be dismissed: (1) that four defendants were not personally involved in the alleged violations; (2) that plaintiff has failed to state a First Amendment claim for retaliation against certain defendants; (3) that plaintiff's confinement did not create a liberty interest giving rise to a right to due process, and thus plaintiff does not have a due process claim against the officers involved in the disciplinary hearings; and (4) that plaintiff has failed to state a claim for conspiracy.

1.   Lack of Personal Involvement

Defendants Supt. Walsh and Supt. Nelson contend that the claims against them should be dismissed because they merely supervised the defendants who committed the alleged violations and were not personally involved in any constitutional wrongdoing.[5]  For example, the complaint alleges that Supt.

---

[5] The defendants have not made this argument on behalf of defendants DSH Bezio and DSS Griffin, but it appears it could apply to them as well.

Nelson gave false testimony at a Tier III hearing, that Supt.
Walsh referred the plaintiff's grievances to others for
investigation and denied Kasiem's appeal from a Tier II hearing
decision, and that both defendants had responsibility for the
supervision of other defendants who violated Kasiem's rights.

Section 1983 provides in part that

> [e]very person who, under color of any statutes,
> ordinance, regulation, custom or usage, of any State .
> . . subjects, or causes to be subjected, any citizen
> of the United States . . . to deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws shall be liable to the party
> injured.

42 U.S.C. § 1983.  In Ashcroft v. Iqbal, 129 S. Ct. 1937, the
Supreme Court held that "[b]ecause vicarious liability is
inapplicable to . . . § 1983 suits, a plaintiff must plead that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution."  Id. at 1948
(emphasis supplied).  The Court rejected the argument that "a
supervisor's mere knowledge of his subordinate's discriminatory
purpose amounts to the supervisor's violating the Constitution,"
because that "conception of supervisory liability is
inconsistent with [the principle that supervisors] may not be
held accountable for the misdeeds of their agents."  Id. at
1949.  "Absent vicarious liability, each Government official,

his or her title notwithstanding, is only liable for his or her
own misconduct." Id.

In Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), the
Second Circuit identified five ways in which supervisory
officials may be personally involved in a violation of
constitutional rights.  Id. at 873.  Liability may attach
to a supervisor when she has

> (1) Directly participated in the violation, (2) failed
> to remedy the violation after being informed of it by
> report or appeal, (3) created a policy or custom under
> which the violation occurred, (4) was grossly
> negligent in supervising subordinates who committed
> the violation, (5) was deliberately indifferent to the
> rights of others by failing to act on information that
> constitutional rights were being violated.

Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007)

(citation omitted), rev'd on other grounds sub nom,

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).[6]

To the extent that Kasiem's claims rest on allegations
that Supt. Walsh and Supt. Nelson referred his
complaints/appeals to others for investigation and that
they were the supervising officers for defendants who
violated his rights, those claims must be dismissed for

---

[6] The Second Circuit has not yet addressed how the Supreme
Court's decision in Iqbal, 129 S. Ct. 1937, may affect the five
Colon categories of conduct that may give rise to supervisory
liability.  For purposes of deciding this motion, it is
unnecessary to explore this issue further.

failure to allege personal involvement in the violation of the plaintiff's rights.  These allegations seek to hold these supervisors accountable for wrongdoing committed by others, and thereby impermissibly plead their vicarious liability.

Kasiem's claim against Supt. Walsh for affirming the findings of a Tier II hearing must also be dismissed.  Even if Supt. Walsh erred in affirming the hearing officer's decision, this act alone does not constitute an intentional deprivation of Kasiem's constitutional rights.

Kasiem alleges that Supt. Nelson personally engaged in misconduct when Supt. Nelson gave false testimony against him at a Tier III hearing.  But, a prison inmate has no "general constitutional right" to be free from false accusations.  See Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997); Martin v. Connelly, 07 Civ. 7199 (DLC), 2008 WL 1821732, at *5 (S.D.N.Y. Apr. 18, 2008).  Thus, all claims against Supt. Walsh and Supt. Nelson are dismissed.

2.   Claim for Retaliation in Violation of the First Amendment

Many of Kasiem's claims rest on his assertion that defendants retaliated against him because he had engaged in protected activity.  Nine defendants have moved to dismiss the retaliation claims on the grounds that the plaintiff's

allegations are too conclusory, that the complaint does not provide any support for an inference that the protected activity caused the alleged retaliatory conduct, or that the complaint does not sufficiently identify the plaintiff's protected speech.

To state a First Amendment retaliation claim, a plaintiff must allege

> (1) that the speech or conduct at issue was protected,
> (2) that the defendant took adverse action against the
> plaintiff, and (3) that there was a causal connection
> between the protected speech and the adverse action.

Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted) (prison case); accord Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008).  To show causation a plaintiff's "allegations must be sufficient to support the inference that the speech played a substantial part in the adverse action."  Davis v. Goord, 320 F.3d 346, 354 (2d Cir. 2003) (citation omitted) (emphasis supplied). Since it is "near[ly] inevitabl[e]" that "prisoners will take exception" with the decisions of prison officials, the Second Circuit has cautioned that prisoners' retaliation claims must be "examin[ed] . . . with skepticism and particular care."  Colon, 58 F.3d at 872; see also Davis, 320 F.3d at 352.  "To survive a motion to dismiss, such claims must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms."

15

Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000) (citation omitted).

Plaintiff's claims for retaliation against seven of the defendants -- Capt. Gilmore, Lt. Ostrowski, ES Woods, S. Camio, Capt. Long, DSS Griffin, and DSMH Hilton -- must be dismissed as too conclusory.  For instance, plaintiff alleges that "Lt. Ostrowski . . . made a false report to DSS Griffin . . . [that she] did not witness Sgt. Rivera made [sic] a death threat to plaintiff, solely on the basis of retaliatory reprisal."  Similarly, plaintiff contends that, "solely on the basis of retaliatory reprisal[,]" ES Woods "exceeded his legal authority by confiscating all three personal law books of plaintiff."

The claim of retaliation against Lt. Sipple is dismissed for failure to plead causation.  Kasiem alleges that the defendant, who acted as a hearing officer, denied him a fair hearing on June 22, 2009 because almost two years earlier -- in October 2007 -- a charge that this defendant had filed against Kasiem was dismissed.  While temporal proximity may provide a basis from which to infer causation, twenty months is too long a gap in time to support such an inference.  See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009); Cronin v. St. Lawrence, 08 Civ.

16

6346(KMK), 2009 WL 2391861, at *5 (S.D.N.Y. Aug. 5, 2009);

Morriseau v. DLA Piper, 532 F.Supp.2d 595, 617 n.142

(S.D.N.Y. 2008) (collecting cases).

Kasiem points out in opposition to this motion that on
June 29, 2009 he filed a grievance against Lt. Sipple.  The
filing of this grievance, however, does not support an
inference that Lt. Sipple acted with a retaliatory intent
seven days earlier.  Therefore, Kasiem's claim of
retaliation brought against Lt. Sipple must be dismissed.

Sgt. Lawrence moves to dismiss the retaliation claim
brought against her on the ground that Kasiem has failed to
identify any protected activity which motivated Sgt.
Lawrence's actions against Kasiem.[7]  Sgt. Lawrence is
alleged to have filed false misbehavior charges against
Kasiem because she was "infuriated with the fact that
plaintiff had won a reversal of her March 9, 2009 Tier III
report."  An inmate's appeal of an adverse hearing decision
constitutes protected speech, much as the filing of a
lawsuit or the filing of any petition to redress grievances

---

[7] Lt. Sipple also moves to dismiss the retaliation claim filed
against him on the grounds that Kasiem's appeal of a hearing
decision is not protected activity.  Since the claim against Lt.
Sipple is dismissed on other grounds, it is unnecessary to reach
Lt. Sipple's argument.

17

does.  See Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir.
2002).

Sgt. Lawrence contends alternatively that the
retaliation claim against her must be dismissed since Sgt.
Lawrence's conduct was protected under the doctrine of
qualified immunity.  "Under qualified immunity, 'government
officials performing discretionary functions generally are
shielded from liability for civil damages insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would
have known.'"  Faghri v. Univ. of Conn., 621 F.3d 92, 96
(2d Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982)).  A right is "clearly established if it would
be clear to a reasonable officer in the position of the
defendant that his conduct was unlawful in the situation he
confronted."  Id. at 96-97 (citing Saucier v. Katz, 533
U.S. 194, 202 (2001)).  This inquiry, in turn, hinges on
"the objective legal reasonableness of the action, assessed
in light of the legal rules that were clearly established
at the time it was taken."  Id. at 97 (citing Pearson v.
Callahan, 129 S. Ct. 808, 822 (2009)).  But, even if Second
Circuit decisions "have not explicitly held a law or course
of conduct to be unconstitutional, . . . the course of

conduct will nonetheless be treated as clearly established if decisions by [the Second Circuit] clearly foreshadow a particular ruling on the issue." <u>Scott v. Fischer</u>, 616 F.3d 100, 105 (2d Cir. 2010) (citation omitted).

It was clearly established in 2009 that a corrections officer could not retaliate against an inmate in reaction to an inmate's complaint about the officer. <u>See Davis</u>, 320 F.3d at 352-53 (2d Cir. 2003) (prison grievances). Thus, if discovery establishes that Kasiem's appeal of the Tier III hearing decision contained allegations of misconduct against Sgt. Lawrence, these allegations would constitute protected activity. Moreover, this finding was clearly foreshadowed by Second Circuit precedent that existed as of 2009. Consequently, Sgt. Lawrence is not entitled to dismissal of Kasiem's retaliation claim on the ground of qualified immunity.

3. Due Process Claims

The complaint brings due process claims against four defendants who served as hearing officers in five disciplinary proceedings against Kasiem. Kasiem asserts that he was denied his right to a fair hearing at hearings conducted by Capt. Gilmore, S. Camio, Lt. Sipple, and DSMH Hilton. Four of the

hearings resulted in sanctions of less than 101 days.[8]  A fifth

hearing, convened by DSMH Hilton on July 21, 2009, resulted in a

penalty of more than 101 days in keeplock confinement.

When asserting a due process claim under § 1983 "a

plaintiff must establish (1) that he possessed a liberty

interest and (2) that the defendants deprived him of that

interest as a result of insufficient process."  Ortiz v.

McBride, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted).

"To be actionable, the liberty interest must subject the

prisoner to 'atypical and significant hardship . . . in relation

to the ordinary incidents of prison life.'"  Vega v. Lantz, 596

F.3d 77, 83 (2d Cir. 2010) (quoting Sandin v. Conner, 515 U.S.

472, 484 (1995)).  While keeplock confinement, more commonly

referred to as confinement in a SHU, without unusual conditions[9]

---

[8]  The four hearings occurred on September 30, 2008, March 19,
2009, June 22, 2009, and June 30, 2009, and resulted in
confinement in keeplock for 60, 35, 21, and 30 days,
respectively.  Although Kasiem was sentenced to 90 days of
confinement at the March 19, 2009 hearing, Kasiem had only
served 35 days of this sentence before it was reversed on
appeal.

[9] Under the "normal conditions of SHU confinement in New York,"
the prisoner is:

> placed in a solitary confinement cell, kept in his
> cell for 23 hours a day, permitted to exercise in the
> prison yard for one hour a day, limited to two showers
> a week, and denied various privileges available to
> general population prisoners, such as the opportunity
> to work and obtain out-of-cell schooling.  Visitors
> [are] permitted, but the frequency and duration [is]

for a period of up to 101 days will generally not constitute an atypical hardship, confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." Ortiz, 380 F.3d at 654; Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000). When an inmate is confined for "an intermediate duration -- between 101 and 305 days -- development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required" in order for an inmate to establish an atypical hardship. Palmer, 364 F.3d at 65 (citation omitted). The "frequency of . . . confinements" is also relevant when assessing whether a prisoner has been subjected to an atypical hardship. Ortiz v. McBride, 323 F.3d 191, 195 n.1 (2d Cir. 2003) (citation omitted).

Assuming an inmate has stated a valid liberty interest, due process requires that he receive certain procedural protections, including:

> advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.

Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

---

less than in general population.  The number of books allowed in the cell [is] also limited.
Palmer v. Richards, 364 F.3d 60, 65 n.3 (2d Cir. 2004) (citation omitted).

The Due Process Clause also dictates the "quantum of evidence required to support a prison's decision to discipline an inmate." Luna v. Pico, 356 F.3d 481, 487 (2d Cir. 2004). To "comport with the minimum requirements of procedural due process" a prison disciplinary board's findings must be "supported by some evidence in the record." Id. at 487-88 (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)). This standard is met if there is "any evidence in the record that supports the disciplinary ruling," so long as this minimal amount of evidence is "reliable." Sira, 380 F.3d at 69 (citation omitted).

Kasiem has not plead or otherwise identified any facts concerning the conditions of his confinement in keeplock at Sullivan.[10] Even if the four shorter keeplock confinements are considered as a pattern, they do not constitute a significant or atypical hardship. As a result, he has failed to plead the existence of a valid liberty interest with respect to the four claims which resulted in SHU confinement for periods of less than 101 days.

---

[10] In his opposition to this motion to dismiss, Kasiem does not identify any unusual conditions of confinement despite the defendants' argument that his due process claims should be dismissed because "normal" keeplock confinement for a period of less than 101 days does not constitute an atypical and significant hardship giving rise to a valid liberty interest.

The fifth claim -- which relates to a July 21, 2009 hearing that culminated in Kasiem serving 120 days in SHU -- may not be dismissed for the failure to identify a liberty interest. Instead, defendants argue that the claim should be dismissed because Kasiem was afforded all the process he was due.  This argument can be swiftly rejected.

The complaint pleads a claim for a violation of Kasiem's right to procedural due process.  Kasiem contends that DSMH was not a "fair and impartial hearing officer" and his findings were not supported by "some evidence" in the record.  Specifically, Kasiem asserts that DMSH Hilton "failed to produce the physical evidence" underlying the June 30 report, based his decision on the allegedly false testimony of Supt. Nelson, and refused to "consider [Kasiem's] defense of retaliatory reprisals."

Defendants argue that since Supt. Nelson testified at the hearing, DSMH Hilton's findings must meet the "some evidence" standard.  In order for the Court to accept this argument, it would have to conduct a review of the hearing record.  Such review would be premature in addressing a motion to dismiss.

4.   Claims for Conspiracy

Kasiem makes numerous allegations of conspiracy against the defendants.  These allegations can be grouped into two general categories:  (1) On various occasions, Sgt. Rivera and Sgt.

Madison, angered by plaintiff's grievances against them, conspired with four hearing officers -- Capt. Gilmore, S. Camio, Lt. Sipple, DSMH Hilton -- and one witness -- Supt. Nelson -- to deny Kasiem fair and impartial hearings; and, (2) on two occasions, CO Albert, Sgt. Rivera, CO Villegas, and CO Simpson conspired to falsely accuse Kasiem of misconduct in order to retaliate against him for filing grievances.

In order to state a § 1983 conspiracy claim, Kasiem must allege:

> (1) an agreement between two or more state actors . .
> . ; (2) to act in concert to inflict an
> unconstitutional injury; and (3) an overt act done in
> furtherance of that goal causing damages.

Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  In pleading these elements, it is not enough for a plaintiff to make only "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights . . . . [D]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."  Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (citation omitted).  Put differently, a plaintiff must plead facts sufficient to put defendants on notice of the claims against them and "enable

defendants intelligently to prepare their defense." Id.
(citation omitted).

Plaintiff's claims of conspiracy are too conclusory
to survive a motion to dismiss.  For example, plaintiff
alleges that on or about September 30, 2008, when
conducting a Tier III hearing, Capt. Gilmore "conspired
with Sgt. Rivera to violate plaintiff's constitutional
rights."  Similarly, Kasiem contends that "[o]n or about
June 30, 2009, defendant C.O. Martin Albert conspired with
Sgt. Rivera, C.O. Villegas and C.O. Simpson to violate the
constitutional rights of plaintiff."

In response to the defendants' contention that his
allegations of conspiracy are too conclusory, Kasiem
asserts in his opposition to the motion, that "on various
occasions[,]" he "overheard Sgt. Rivera state to other
officers that he (Sgt. Rivera) personally spoke" with
eleven of the other defendants in this case and that they
had "made an agreement to conspire to retaliate against
plaintiff for having filed grievance and formal complaints
against their co-workers."  Kasiem does not identify the
dates or places of Sgt. Rivera's statements or the persons
with whom he was speaking, nor does Kasiem explain how he
was able to overhear Sgt. Rivera describe the plot to

conspire against him.  This additional statement, therefore, even if it were included in a pleading, would be inadequate to survive defendants' motion to dismiss.

5. Compensatory Damages

Finally, the defendants have moved to dismiss Kasiem's demand for compensatory damages based on his emotional distress.  Federal law prohibits prisoners from bringing a "civil action . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This provision bars prisoners from recovering more than nominal damages "for mental or emotional injury" arising from a "constitutional violation in the absence of a showing of actual physical injury."  Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002).

Kasiem's complaint does not identify any physical injury that he suffered as a result of the defendants' alleged violation of his rights under federal law.  In his opposition to this motion, however, Kasiem reports that he suffered permanent damage to his vision because Sgt. Rivera "induced Dr. Sidorowicz . . . to retaliate against [him] for having filed grievance[s] and formal complaints . . . by depriving plaintiff of prompt medical treatment

26

for his vision." The complaint does not contain any claim based on inadequate medical care, contain any allegation regarding Dr. Sidorowicz, or name the doctor as a defendant. The plaintiff will be permitted to amend his pleading to allege an intentional deprivation of medical care for a serious medical condition. In the meantime, the defendants' motion to strike any demand for compensatory damages based on the claims currently pleaded is granted.

<u>CONCLUSION</u>

For the reasons stated above, all of the claims against the following eleven defendants are dismissed: Supt. Walsh, Supt. Nelson, DSH Bezio, Capt. Gilmore, Lt. Ostrowski, ES Woods, S. Camio, Capt. Long, DSS Griffin, Lt. Sipple, and CO Simpson. Additionally, Kasiem's conspiracy claim against DSMH Hilton is dismissed. Kasiem's First Amendment retaliation claim against Sgt. Lawrence and his due process claim against DSMH Hilton, however, survive. The plaintiff will be allowed to file an amended complaint for the sole purpose of alleging claims based on deliberate indifference to a serious medical condition.

An order setting a schedule for Kasiem's amended complaint and scheduling an initial pretrial conference accompanies this Opinion.

        SO ORDERED:

Dated:     New York, New York
            January 18, 2011

                                  _____
                                    DENISE COTE
                        United States District Judge

COPIES SENT TO:


Allah-Kasiem                          Kevin R. Harkins
83-A-0783                             Assistant Attorney General
Sullivan Correctional Facility        120 Broadway, 24th Floor
P.O. Box 116                          New York, NY 10271
Fallsburg, NY 12733